## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY - NEWARK DIVISION

**KIM & BAE, P.C.**
2160 N. Central Road, Suite 303
Fort Lee, NJ 07024
(201) 585-2288
Bong June Kim, Esq. (BK-6989)
*Attorneys for Plaintiffs*

| | |
|---|---|
| KYUNGSUN YU, JOON SUN LEE, and YOUNGSUH CHO<br><br>Plaintiffs,<br><br>- *vs.* -<br><br>2100 NORTH CENTRAL, LLC,<br>2100 NORTH CENTRAL ROAD, LLC,<br>LUMEN ARCHITECTURAL ENGINEERING,<br>PC, ROBERT Y. LEE (a/k/a DO YOUNG LEE),<br>JIHN U. RHI, JUSTIN PARK (a/k/a JUN KYU PARK), DANIEL MOON, and JOHN DOES<br>1 through 50,<br><br>Defendants. | CIVIL ACTION<br><br>09 Civ. _____<br><br>COMPLAINT AND JURY DEMAND |

Plaintiffs, Kyungsun Yu, Joon Sun Lee and Youngsuh Cho ("Plaintiffs" or "plaintiffs"), by their undersigned attorneys, as and for their Complaint against defendants, 2100 North Central, LLC, 2100 North Central Road, LLC, Lumen Architectural Engineering, PC, Robert Y. Lee (a/k/a Do Young Lee), Jihn U. Rhi, Justin Park (a/k/a Jun Kyu Park), Daniel Moon, and John Does 1 through 50 (collectively, "Defendants" or "defendants") herein, allege upon knowledge with respect to their own acts and upon information and belief as to all other matters, as follows:

## NATURE AND SUMMARY OF ACTION

1.    Plaintiffs bring this action to recover damages resulting from defendants' unlawful actions and omissions, including defendants' violations of federal securities laws and governing regulations, as well as defendants' fraud, fraudulent transfers, breach of contracts, breach of implied covenants of good faith and fair dealing, violations of the New Jersey Racketeer Influenced and Corrupt Organizations Act, violations of the New Jersey Consumer Fraud Act, violations of defendants' fiduciary obligations, and defendants' participation in a civil conspiracy.  Defendants' unlawful actions and omissions also warrant and necessitate the entry of an Order granting plaintiffs certain injunctive relief, including the preservation of company assets, the preservation and immediate production of company records, the appointment of a receiver to assume control of 2100 North Central LLC, and an accounting.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1331.  More specifically, Plaintiffs seek relief under Sections 12 (2), 15 and 17(a) of the Securities Act of 1933 (as amended) (the "1933 Act") (15 U.S.C. §§ 77l(a)(2), 77o, and 77q(a)), under Sections 10(b) and 20 of the Securities Exchange Act of 1934 (as amended) (the "1934 Act") (15 U.S.C. §§78j(b) and 78t, and under Rule 10b-5 promulgated thereunder (17 C.F.R. 240.10b-5) ("Rule 10b-5").

3.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000.00 and because the matter in controversy is between "citizens of different States [ ] in which citizens or subjects of a foreign state are additional parties," within the meaning of 28 U.S.C. § 1332(a)(3).

4.     The Court's Supplemental Jurisdiction pursuant to 28 U.S.C. §1367 is also invoked to empower the Court to hear claims arising under the statutes and common law of the State of New Jersey that form part of the same case or controversy.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

### PARTIES

6.     Plaintiff Kyungsun Yu ("Plaintiff Yu" or "Yu") was at all relevant times and still is a citizen of the Republic of Korea with a business address of 235-1 Cheongjin-Dong, Chongno-Ku, Seoul, Korea.  Plaintiff Yu is the Chairman and Chief Executive Officer of Eugene Group ("Eugene"), a conglomerate corporation located in the Republic of Korea.

7.     Plaintiffs Joon Sun Lee ("Plaintiff Lee") was at all relevant times and still is a lawful permanent resident of the United States of America, residing at 155 West 68th Street, Apartment 1912, New York, NY.  As a consequence of her status as a lawful permanent resident of the United States who has resided in the State of New York at all relevant times, Plaintiff Lee is deemed to be a citizen of the State of New York by 28 U.S.C. § 1332(a) for the purposes of providing this Court with subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(3).

8.      Plaintiff Youngsuh Cho ("Plaintiff Cho" or "Cho") was at all relevant times and still is a citizen of the Republic of Korea residing at Hyundai I-Park Villa 101-203, 1477-1 Seocho-dong Seocho-gu, Seoul, Korea, 137-868.

9.     Defendant 2100 North Central, LLC ("North Central") was at all relevant times and still is a New Jersey limited liability company with its principal place of business located at 2125 Center Avenue, Fort Lee, New Jersey.  Defendant North Central is a citizen of the State of New Jersey.

10.   Defendant 2100 North Central Road, LLC ("North Central Road") was at all relevant times and still is a Delaware limited liability company with its principal place of business located at 2125 Center Avenue, Fort Lee, New Jersey.  Defendant North Central Road is a citizen of the State of New Jersey and of the State of Delaware.

11.   Defendant Lumen Architectural Engineering, P.C. ("Lumen") was at all relevant times and still is a New Jersey professional corporation with its principal place of business at 2125 Center Avenue, Fort Lee, New Jersey 07024.  Defendant Lumen is a citizen of the State of New Jersey.

12.   Defendant Robert Lee (a/k/a Do Young Lee) ("Defendant Lee" or "Lee") is a natural person whose last-known primary residence is 49 Frederick Street, Little Ferry, New Jersey.  At times relevant herein, Defendant Lee was the chief executive officer of Lumen, and was also the Manager of North Central and of North Central Road.  Defendant Lee is a citizen of the State of New Jersey.

13.   Defendant Jihn U Rhi ("Defendant Rhi" or "Rhi") is a natural person and an attorney-at-law in the Republic of Korea, with a business address at 159-1 Samsung-Dong, Kangnam-Ku, Seoul, Republic of Korea.  Defendant Rhi is a citizen of the Republic of Korea.

14.   Defendant Daniel Moon ("Defendant Moon" or "Moon") is a natural person whose last-known primary residence is 25 Geraldine Court, Englewood Cliffs, New Jersey.  Defendant Moon, at times relevant herein, was an officer and/or director of Lumen.  Defendant Moon is a citizen of the State of New Jersey.

15.   Defendant Justin Park (a/k/a Jun Kyu Park) ("Defendant Park" or "Park") is a natural person whose last-known primary residence was 205 Jersey Avenue, #4, Cliffside Park, New

Jersey.  Defendant Park, at times relevant herein, was an officer and/or director of Lumen. Defendant Park is a citizen of the State of New Jersey.

16.   Defendants John Does 1 through 50 are natural and/or corporate persons whose true identities are presently unknown and who participated in the wrongful actions described more fully below.

## FACTUAL BACKGROUND

17.   The claims asserted in this action arise out of the defendants' fraudulent and otherwise unlawful actions and omissions in connection with their successful efforts to induce plaintiffs to invest in North Central, and with respect to the acquisition, management, and development/conversion of certain real property located in the Borough of Fort Lee, County of Bergen, and State of New Jersey that is designated on the official tax map of the Borough of Fort Lee as Block 6105, Lot 1, and that is more commonly known as 2100 North Central Road, Fort Lee, New Jersey (the "Subject Property" or the "Property").  The Subject Property is located in close proximity to the George Washington Bridge and is improved with a multi-level office building and parking deck.  As set forth below in more detail, defendants engaged in fraudulent and otherwise unlawful actions and omissions in connection with the acquisition, management, and development/conversion of the Subject Property (the "Project") to induce plaintiffs to invest in North Central.

18.   North Central is a New Jersey limited liability company formed on December 18, 2006 with the stated express purpose of acquiring the Subject Property, developing, managing, and leasing it, and selling condominium shares in it.  This purpose, in sum and substance, was articulated in Article 2 of North Central's Operating Agreement, executed on December 27, 2006.

19.   North Central Road is a Delaware limited liability company formed on or about February 15, 2007 -- also with the stated express purpose of acquiring the Subject Property, developing, managing, and leasing it, and selling condominium shares in it.

**Defendants' Initial Contacts with Plaintiff Yu and with Eugene Group**

20.   Plaintiff Yu is, and was at all relevant times, the Chairman and Chief Executive Officer of Eugene, a prominent multi-billion dollar conglomerate corporation based in the Republic of Korea.

21.   In early 2006, Defendant Rhi approached Plaintiff Yu about the Project and requested that Plaintiff Yu, as Chairman of Eugene, convince Eugene to authorize an investment in the Project by Eugene.

22.   Defendant Rhi told Plaintiff Yu that the Project will consist of investors who would raise enough capital on their own to purchase the Subject Property.

23.   Defendant Rhi also told Plaintiff Yu that the building located on the Subject Property would be converted from office usage to condominium in a short amount of time that would not exceed two years.  Defendant Rhi also led Plaintiff Yu to believe that the Project would yield a very high investment return and that Robert Lee was a very talented person capable of acquiring all permits and licenses to accomplish all necessary tasks within the stated time frame.

24.   Plaintiff Yu assigned to Young Min Joo ("Joo" or "President Joo"), who was the President of Eugene at the time, the task of analyzing the Project.  Defendant Rhi and Joo reviewed the Project and after review, Joo reported to Plaintiff Yu that the Project was an excellent one and that Eugene should invest in it.

25.   Based upon Joo's report, Eugene, through Plaintiff Yu, paid an earnest money deposit of $1 Million in or about December of 2006 and executed a letter of intent and commitment on

behalf of Eugene, with the understanding that this money would be returned if the investment was not made by Eugene.

26.   Joo subsequently advised Plaintiff Yu that, in order to avoid complications if the investment was made through Eugene (including regulatory issues), it would be far easier to invest on a personal level, and that they should do so because the project was an excellent one.

### Defendants Induce Plaintiff Yu to Invest in North Central

27.   Defendant Rhi also advised Plaintiff Yu that he had thoroughly reviewed the Project and he stated that it is an excellent Project wherein even if the return on the investment may be less than anticipated, he guaranteed Yu that the Project will not lose money.  Defendant Rhi led Plaintiff Yu to believe that the purchase price of the Subject Property was far below the market price.

28.   Defendant Rhi also made representations to Plaintiff Yu which led Yu to believe that, as the price of the Property was far below the market price, purchasing and then selling the Subject Property, even without any conversion, would certainly yield a large profit for investors. Defendant Rhi told Plaintiff Yu that he was involved in many such investment projects, and comparing the Project to those, the Project was an excellent Project; thus, he himself was also one of the investors.  Furthermore, Defendant Rhi told Plaintiff Yu that he would be monitoring all aspects of the Project to ensure that it will be a success.

29.   Plaintiff Yu had known Defendant Rhi for nearly ten years and had invested in other projects under Rhi's direction.

30.   Attorneys in Korea generally are more respected, revered and trusted than their counterparts in the United States.  Due to his prior relationship with Defendant Rhi and as Defendant Rhi was an attorney in Korea, Plaintiff Yu placed great trust and confidence in Rhi

and believed every word that Defendant Rhi spoke to him, including the representations that Defendant Rhi would continually monitor the Project and ensure that it will be a success. Plaintiff Yu considered Defendant Rhi to be his attorney with respect to the Project, which meant that Yu placed great trust and confidence in Rhi's statements regarding the Project.

31.   At the time Rhi made these representations to Yu, Rhi knew that Yu considered Rhi to be his attorney with respect to the Project, and that Yu placed great trust and confidence in Rhi's statements regarding the Project.

32.   Upon information and belief, Defendant Rhi was conducting a due diligence review of the Project on behalf of Plaintiff Yu and was reporting to President Joo, who then was reporting back to Plaintiff Yu.  In his due diligence report, Defendant Rhi wrote that the variance conversion from office to condo would be obtained by late summer of 2007; that it would take a maximum of approximately six months to obtain all construction approvals for the Project, that $16.5 million would be deducted from the purchase price of the Building as a surrender value of the then-current tenancy; and that the remaining amount to be paid towards the purchase price of the Subject Property would be paid substantially from the funds that defendants received from other investors.

33.   Defendant Rhi never advised Plaintiff Yu that the actual purchase price of the Subject Property that Defendant Lee, acting on behalf of North Central, had agreed to pay was $45 million, and that this actual purchase price far exceeded the fair market value of the Subject Property.

34.   By making these false representations to Plaintiff Yu, Defendants Rhi and Lee misled Plaintiff Yu into believing that the amount to be paid to purchase the Subject Property would be

substantially paid by other investors, and not by funds obtained almost entirely from mortgage financing.

35.   Upon information and belief, defendant Rhi obtained from defendant Lee the information that formed the basis of these representations that Rhi made to Yu regarding the Project.

36.   All of these representations that Rhi made to Yu regarding the Project were material and false, Rhi made these false, material representations knowing that they were false, he made these representations to Yu with the intention that Yu rely upon these false material representations, Yu did actually rely upon these false material representations to his detriment, and as a result of this reliance, Yu sustained substantial damages.

37.   In addition, defendants made a number of false, misleading, and deceptive material representations in writing to Plaintiff Yu that induced Plaintiff Yu to invest in North Central and in the Project, including but not limited to such misrepresentations described below in paragraphs 38 through 51 of this Complaint.

38.   On September 5, 2007 defendant Park of defendant Lumen sent an e-mail to Mr. Ahn, an employee of Eugene, that originated in New Jersey and that was directed to Plaintiff Yu and Plaintiff Cho.  Defendant Park caused certain documents to be attached to this e-mail, including what defendants identified as "Investor Packages" for Plaintiffs Yu and Cho.  These "Investor Packages directed to Plaintiffs Yu and Cho each consisted of two documents:  (i) a letter of intent to invest in North Central that one or more of the defendants drafted, that consisted of a form letter addressed to defendant Lee, and that was written in such a manner so as to lead a reader to believe that Plaintiffs had created these letters (notwithstanding that one or more of the defendants actually created them); and (ii) a document entitled, "OPERATING AGREEMENT

OF 2100 NORTH CENTRAL, LLC."  The "Investor Packages" that defendants directed to Plaintiffs Yu and Cho contained false, deceptive, and/or misleading material representations that defendants directed to Plaintiffs and that were made with the intention of inducing Plaintiffs to invest in North Central and in the Project by accepting the terms of defendants' offering.

39.  The body of the letter of intent to invest that defendant Park attached to this e-mail on September 5, 2007 and that was part of the "Investor Package" directed to Plaintiff Yu (hereinafter "Yu Letter of Intent"), read as follows:

```
September 6, 2007

Mr. Do Robert Y. Lee
2100 North Central, LLC
2125 Center Avenue, Suite 100
Fort Lee, NJ 07024

          RE:  2100 NORTH CENTRAL, LLC
               2100 North Central Road
               Fort Lee, New Jersey 07024

Dear Mr. Lee:

This letter will set forth my interest in investing in the
above project. I understand that the property has been
acquired and developed by 2100 NORTH CENTRAL, LLC, a newly
formed entity for that purpose. I further understand that
you have been the Manager of 2100 NORTH CENTRAL, LLC.

This will confirm that I intend to invest the sum of
$1,000,000.00 USD and that I will own estimated four point
sixty three percent (4.63%) membership interest in 2100
NORTH CENTRAL, LLC. I further understand that my ownership
of the membership interest is subject to execution and
delivery of a formal Operating Agreement, the form of which
is annexed to this letter and is acceptable to me.

I understand that my interest is subject to my delivery (by
wire transfer to the account set forth below) of the sum
set forth above to 2100 North Central, LLC by September 7,
2007.
```

```
                        HSBC BANK USA, N.A
              Account Name: 2100 NORTH CENTRAL, LLC
                    Routing Number: 021001088
                    Account Number: 386016798
```

By my delivery of this letter to you, I inform you that I
agree with the above and intend to invest upon the terms
set forth herein.


Very truly yours,


_____
Print Name: Kyung Sun Yu

40.  The Yu Letter of Intent contained false, deceptive, and/or misleading material representations that defendants directed to Plaintiff Yu and that were made with the intention of inducing Plaintiff Yu to invest in North Central and in the Project by accepting the terms of defendants' offering.  These false, deceptive, and/or misleading material representations in the Yu Letter of Intent include, but are not limited to the following:

- Defendants' representation to Plaintiff Yu "that the property **has been acquired and developed by 2100 NORTH CENTRAL, LLC, a newly formed entity for that purpose**"  (emphasis added);

- Defendants' repeated references to "2100 NORTH CENTRAL, LLC" throughout the Yu Letter of Intent.

41.  At the time they created the Yu Letter of Intent and transmitted it to Plaintiff Yu by e-mail, defendants actually knew that the material representation set forth therein – "that the property has been acquired and developed by 2100 NORTH CENTRAL, LLC, a newly formed entity for that purpose" – was false, they made this false material representation knowing that it was false and with the intention that plaintiff Yu rely upon it, and plaintiff Yu relied upon it to his detriment and sustained substantial losses as a result of that reliance.

- 11 -

42.   In addition, at the time they created the Yu Letter of Intent and transmitted it to Plaintiff Yu by e-mail, defendants actually knew that the repeated references to "2100 NORTH CENTRAL, LLC" were deceptive and misleading (particularly insofar as they were intended to mislead and deceive any reader of the Yu Letter of Intent into believing that "2100 NORTH CENTRAL, LLC" had "acquired" the Subject Property), they made these deceptive and misleading representations knowing that they were deceptive and misleading and with the intention that plaintiff Yu rely upon them, and plaintiff Yu relied upon them to his detriment and sustained substantial losses as a result of that reliance.

43.   Defendant Lee, acting both individually and as agent of North Central, North Central Road, and Lumen, knew that these material representations in the Yu Letter of Intent were false, deceptive, and misleading because:  (a) he caused North Central Road to be created less than two weeks prior to the closing of the purchase of the Subject Property in February 2007; (b) he caused North Central's valuable contractual rights to purchase the Subject Property to be transferred to North Central Road; and (c) he executed a number of documents on behalf of North Central Road on or about February 28, 2007 that enabled North Central Road to purchase the Property instead of North Central.

44.   By early Spring 2007 at the latest, all defendants had actual knowledge of this same information.

45.   Approximately six months later, with full knowledge that North Central did <u>not</u> purchase the Subject Property (and, in fact, that it did not own any real property at all), and that North Central Road actually purchased the Property, defendants created the Yu Letter of Intent and transmitted it by e-mail to Plaintiff Yu as part of their efforts to solicit Yu's purchase of equity <u>in</u>

North Central knowing that the content of the Yu Letter of Intent was false, deceptive, and misleading.

46.   Furthermore, by its terms, the Yu Letter of Intent made Plaintiff Yu's "ownership of the [4.63%] membership interest [in 2100 North Central, LLC] subject to execution and delivery of [the 2100 North Central, LLC] Operating Agreement. . . ."

47.   The Operating Agreement of 2100 North Central, LLC, which according to its terms was made and entered into on December 27, 2006 (hereinafter the "North Central Operating Agreement"), contained false, deceptive, and/or misleading material representations that defendants directed to Plaintiff Yu and that were made with the intention of inducing Plaintiff Yu to invest in North Central and in the Project by accepting the terms of defendants' offering. These false, deceptive, and/or misleading material representations in the North Central Operating Agreement include, but are not limited to the following:

- Defendants' representation to Plaintiff Yu that "[t]he purposes for which [2100 North Central, LLC] is organized is **to acquire, develop, redevelop, build, lease, sell and manage real property including 2100 North Central Avenue [sic], Fort Lee, New Jersey**, . . ."  [Emphasis added.]

48.   At the time they created the North Central Operating Agreement and transmitted it to Plaintiff Yu by e-mail, defendants actually knew that the material representation set forth therein – that "[t]he purposes for which [2100 North Central, LLC] is organized is to acquire, develop, redevelop, build, lease, sell and manage real property including 2100 North Central Avenue [sic], Fort Lee, New Jersey, . . ." – was false, deceptive, and misleading; they made this material representation knowing that it was false, deceptive, and misleading, and with the intention that plaintiff Yu rely upon it; and plaintiff Yu relied upon it to his detriment and sustained substantial losses as a result of that reliance.

49.  When the Yu Letter of Intent and the North Central Operating Agreement are read together (as defendants plainly intended Plaintiff Yu to do in order to induce Plaintiff Yu to invest in North Central), these documents convey the false, misleading, and deceptive material representation that investors such as Plaintiff Yu were thereby being solicited to invest, and were actually investing, in the limited liability company that "acquired" the Subject Property and that was in the process of developing/redeveloping it.

50.  At the time they transmitted the Yu Letter of Intent and the North Central Operating Agreement to Plaintiff Yu, defendants actually knew that these material representations were false, deceptive, and misleading, and that these representations were likely to deceive and mislead Plaintiff Yu.

51.  In October 2007, defendants provided Plaintiff Yu with a document the defendants had prepared and that is entitled, "2100 North Central, LLC Equity Summary."  This document contains false, misleading, and deceptive representations -- including drastically-overstated financial figures with respect to the purported then-current value of Plaintiff Yu's "Equity Net Worth" and the projected value of Plaintiff Yu's "Equity Net Worth" as of March 2009 -- and is based upon the deceptive and misleading assumption that the construction and "Sell Out" phases of the Project would be completed by March 2009.

52.  In reliance on these and other material misrepresentations made by Defendants, Plaintiff Yu was induced to invest $1,000,000.00 in the Project.

53.  In 2007 and again in 2008, Plaintiff Yu traveled to the United States and visited the Subject Property as well as the offices of defendant Lumen.  Both times, Plaintiff Yu met with Defendant Lee to discuss the Project.  Both times Defendant Lee promised and guaranteed Plaintiff Yu that all aspects of the Project were progressing well, and that there was not a single

problem with the Project in terms of construction schedules, permits/approvals or construction financing matters.

54.  Had the defendants provided Plaintiff Yu with accurate, non-deceptive information with respect to the Project -- including but not limited to:  (i) the true purchase price that Defendant Lee had obligated North Central to pay for the Subject Property; (ii) the fact that the purchase of the Subject Property was only being accomplished through the incurrence of substantial mortgage debt secured against the Subject Property; (iii) accurate information that North Central is not, and never was, the owner of the Subject Property; (iv) accurate and non-misleading financial figures with respect to the true value of Plaintiff Yu's "Equity Net Worth" in North Central, the projected value of Plaintiff Yu's "Equity Net Worth" in North Central as of October 2007 and March 2009, and (v) realistic and non-deceptive assumptions (and consequent deceptive and misleading representations to Yu) as to when the construction and "Sell Out" phases of the Project would be completed -- Plaintiff Yu would not have invested in North Central and/or in the Project at all.

55.  Had the defendants provided Plaintiff Yu with accurate, non-deceptive information with respect to the true overall status of the Project, and of the material aspects of the Project (such as construction schedules, permits/approvals or construction financing matters), Plaintiff Yu would have withdrawn his investment in North Central.

### Defendants Induce Plaintiffs Cho and Lee to Invest in North Central

56.  On August 29, 2007, Plaintiff Cho met with President Joo in Joo's office.  During this meeting, Joo mentioned the Project to Plaintiff Cho for the first time, and at that time Joo told Cho the following with respect to the Project:

- There is an excellent real estate development project near the George Washington Bridge in New Jersey.

- It was reviewed from the Eugene Corporation headquarters and was determined to have great business potential. It was further reviewed by the attorneys and there are not any drawbacks. It involves renovating an existing building.

- Because of the Project's great worthiness, Chairman Yu and Mr. Joo have personally invested $500,000 apiece, and both plan to each invest an additional $500,000 each.

- There are still some investment shares available that were originally to be issued to Eugene Corporation, and Joo recommended that Plaintiff Cho invest in the Project. Joo told Cho that if he invests, he (meaning Cho) should be able to do so on the same favorable terms and conditions as Chairman Yu and President Joo received.

- Joo also told Cho that in two years or less, the Project will be complete and he (meaning Cho) will make a 100 percent profit.

57.   After this meeting, Plaintiff Cho received two or three telephone calls from Joo inquiring about Cho's investment decision. Joo reiterated in these phone conversations that the investment terms and conditions would be very favorable, and he intimated that Cho's investment in the Project would establish a relationship with the "inner circle" of Eugene Corporation, since its members, like Joo himself, would be investing in the Project. Joo boasted about his connections and assured Cho that should he choose to invest, he would ensure that Cho's investment would receive favorable terms. Joo further stated that chairman Yu and he were in the process of making additional investments in the Project, that if Cho invested, his investment could be processed with theirs, and that the investment confirmation and the funding deadline was within the next week.

58.   On September 4, 2007, Cho had a work-related lunch with Joo.  During this meeting, Mr. Joo discussed the Project again.  Cho told Joo that he planned on investing a total of $500,000, with him and his wife each paying $250,000.

59.   On September 6, 2007, Plaintiff Cho received an e-mail from Defendant Park of Defendant Lumen requesting that Cho send Park the executed investment package – a letter of intent and an operating agreement.  In response, Cho requested that separate investment packages be sent for Cho and his wife, Plaintiff Lee, because their investment in North Central was to be half by Cho and half by his wife.

60.   In response to Cho's request, defendant Park e-mailed to Plaintiff Cho and Plaintiff Lee separate investment packages in each of their names.

61.   Defendants made a number of false, misleading, and deceptive material representations to Plaintiff Cho and Plaintiff Lee that induced them to invest in North Central and in the Project, including but not limited to such misrepresentations described below in paragraphs 62 through 85 of this Complaint.

62.   On September 7, 2007 defendant Park of defendant Lumen sent an e-mail that originated in New Jersey to Plaintiff Cho in the Republic of Korea.  Defendant Park caused certain documents to be attached to this e-mail, including what he identified as "Investor Packages" for Plaintiffs Cho and Lee.  These "Investor Packages" directed to Plaintiff Cho and Plaintiff Lee each consisted of two documents:  (i) a letter of intent to invest in North Central that one or more of the defendants drafted, that consisted of a form letter addressed to defendant Lee, and that was written in such a manner so as to lead a reader to believe that Plaintiffs had created these letters (notwithstanding that one or more of the defendants actually created them); and (ii) the North Central Operating Agreement.

63.  The "Investor Package" that defendants directed to Plaintiff Cho contained false, deceptive, and/or misleading material representations that defendants directed to Plaintiff Cho and that were made with the intention of inducing Plaintiff Cho to invest in North Central and in the Project by accepting the terms of defendants' offering.

64.  The body of the letter of intent to invest that defendant Park attached to this e-mail on September 7, 2007 and that was part of the "Investor Package" directed to Plaintiff Cho (hereinafter "Cho Letter of Intent"), read as follows:

```
September 6, 2007

Mr. Do Robert Y. Lee
2100 North Central, LLC
2125 Center Avenue, Suite 100
Fort Lee, NJ 07024
```

**RE:   2100 NORTH CENTRAL, LLC**
**2100 North Central Road**
**Fort Lee, New Jersey 07024**

```
Dear Mr. Lee:

This letter will set forth my interest in investing in
the above project. I understand that the property has
been acquired and developed by 2100 NORTH CENTRAL, LLC, a
newly formed entity for that purpose. I further
understand that you have been the Manager of 2100 NORTH
CENTRAL, LLC.

This will confirm that I intend to invest the sum of
$250,000.00 USD and that I will own estimated point nine
two five percent (.925%) membership interest in 2100
NORTH CENTRAL, LLC. I further understand that my
ownership of the membership interest is subject to
execution and delivery of a formal Operating Agreement,
the form of which is annexed to this letter and is
acceptable to me.

I understand that my interest is subject to my delivery
(by wire transfer to the account set below) of the sum
set forth above to 2100 North Central, LLC by September
11, 2007.
```

                              HSBC BANK USA, N.A
                    Account Name: 2100 NORTH CENTRAL, LLC
                         Routing Number: 021001088
                         Account Number: 386016798

        By my delivery of this letter to you, I inform you that I
        agree with the above and intend to invest upon the terms
        set forth herein.


        Very truly yours,

        _____
        Print Name: Young Suh Cho

   65.   The Cho Letter of Intent contained false, deceptive, and/or misleading material
representations that defendants directed to Plaintiff Cho and that were made with the intention of
inducing Plaintiff Cho to invest in North Central and in the Project by accepting the terms of
defendants' offering.  These false, deceptive, and/or misleading material representations in the
Cho Letter of Intent include, but are not limited to the following:

   •   Defendants' representation to Plaintiff Cho "that the property **has been acquired and
       developed by 2100 NORTH CENTRAL, LLC, a newly formed entity for that
       purpose**"  (emphasis added);

   •   Defendants' repeated references to "2100 NORTH CENTRAL, LLC" throughout the
       Cho Letter of Intent.

   66.   At the time they created the Cho Letter of Intent and transmitted it to Plaintiff Cho by e-
mail, defendants actually knew that the material representation set forth therein -- "that the
property has been acquired and developed by 2100 NORTH CENTRAL, LLC, a newly formed
entity for that purpose" – was false, they made this false material representation knowing that it
was false and with the intention that plaintiff Cho rely upon it, and plaintiff Cho relied upon it to
his detriment and sustained substantial losses as a result of that reliance.

- 19 -

67.   In addition, at the time they created the Cho Letter of Intent and transmitted it to Plaintiff Cho by e-mail, defendants actually knew that the repeated references to "2100 NORTH CENTRAL, LLC" were deceptive and misleading (particularly insofar as they were intended to mislead and deceive any reader of the Cho Letter of Intent into believing that "2100 NORTH CENTRAL, LLC" had "acquired" the Subject Property), they made these deceptive and misleading representations knowing that they were deceptive and misleading and with the intention that plaintiff Cho rely upon them, and plaintiff Cho relied upon them to his detriment and sustained substantial losses as a result of that reliance.

68.   Defendant Lee, acting both individually and as agent of North Central, North Central Road, and Lumen, knew that these material representations in the Cho Letter of Intent were false, deceptive, and misleading because:  (a) he caused North Central Road to be created less than two weeks prior to the closing of the purchase of the Subject Property in February 2007; (b) he caused North Central's valuable contractual rights to purchase the Subject Property to be transferred to North Central Road; and (c) he executed a number of documents on behalf of North Central Road on or about February 28, 2007 that enabled North Central Road to purchase the Property instead of North Central.

69.   By early Spring 2007 at the latest, all defendants had actual knowledge of this same information.

70.   Approximately six months later, with full knowledge that North Central did <u>not</u> purchase the Subject Property (and, in fact, that it did not own any real property at all), and that North Central Road <u>did</u> purchase the Property, defendants created the Cho Letter of Intent and transmitted it by e-mail to Plaintiff Cho as part of their efforts to solicit Cho's purchase of equity

in North Central knowing that the content of the Cho Letter of Intent was false, deceptive, and misleading.

71.  Furthermore, by its terms, the Cho Letter of Intent made Plaintiff Cho's "ownership of the [.925%] membership interest [in 2100 North Central, LLC] subject to execution and delivery of [the 2100 North Central, LLC] Operating Agreement. . . ."

72.  The North Central Operating Agreement contained false, deceptive, and/or misleading material representations that defendants directed to Plaintiff Cho and that defendants made with the intention of inducing Plaintiff Cho to invest in North Central and in the Project by accepting the terms of defendants' offering.  These false, deceptive, and/or misleading material representations in the North Central Operating Agreement include, but are not limited to the following:

- Defendants' representation to Plaintiff Cho that "[t]he purposes for which [2100 North Central, LLC] is organized is **to acquire, develop, redevelop, build, lease, sell and manage real property including 2100 North Central Avenue [sic], Fort Lee, New Jersey**, . . ."  [Emphasis added.]

73.  When the Cho Letter of Intent and the North Central Operating Agreement are read together (as defendants plainly intended Plaintiff Cho to do in order to induce Plaintiff Cho to invest in North Central), these documents convey the false, misleading, and deceptive material representation that investors such as Plaintiff Cho are being solicited to invest, and are actually investing, in the limited liability company that "acquired" the Subject Property and that is in the process of developing/redeveloping it.

74.  On September 10, 2007 defendant Park of defendant Lumen sent an e-mail that originated in New Jersey and that was directed to Plaintiff Lee in the State of New York. Defendant Park caused certain documents to be attached to this e-mail, including what he

identified as an "Investor Package" for Plaintiff Lee.  This "Investor Package" directed to Plaintiff Lee consisted of two documents:  (i) a letter of intent to invest in North Central that one or more of the defendants drafted, that consisted of a form letter addressed to defendant Lee, and that was written in such a manner so as to lead a reader to believe that Plaintiff Lee had created this letter (notwithstanding that one or more of the defendants actually created them); and (ii) the North Central Operating Agreement.

75.  The "Investor Package" that defendants directed to Plaintiff Lee contained false, deceptive, and/or misleading material representations that defendants directed to Plaintiff Lee and that were made with the intention of inducing Plaintiff Lee to invest in North Central and in the Project by accepting the terms of defendants' offering.

76.  The body of the letter of intent to invest that defendant Park attached to this e-mail on September 10, 2007 and that was part of the "Investor Package" directed to Plaintiff Lee (hereinafter "Lee Letter of Intent"), read as follows:

```
September 6, 2007

Mr. Do Robert Y. Lee
2100 North Central, LLC
2125 Center Avenue, Suite 100
Fort Lee, NJ 07024

          RE:   2100 NORTH CENTRAL, LLC
                2100 North Central Road
                Fort Lee, New Jersey 07024

Dear Mr. Lee:

This letter will set forth my interest in investing in the
above project. I understand that the property has been
acquired and developed by 2100 NORTH CENTRAL, LLC, a newly
formed entity for that purpose. I further understand that
you have been the Manager of 2100 NORTH CENTRAL, LLC.

This will confirm that I intend to invest the sum of
$250,000.00 USD and that I will own estimated point nine
```

two five percent (0.925%) membership interest in 2100 NORTH CENTRAL, LLC. I further understand that my ownership of the membership interest is subject to execution and delivery of a formal Operating Agreement, the form of which is annexed to this letter and is acceptable to me.

I understand that my interest is subject to my delivery (by wire transfer to the account set forth below) of the sum set forth above to 2100 North Central, LLC by September 7, 2007.

HSBC BANK USA, N.A
Account Name: 2100 NORTH CENTRAL, LLC
Routing Number: 021001088
Account Number: 386016798

By my delivery of this letter to you, I inform you that I agree with the above and intend to invest upon the terms set forth herein.

Very truly yours,

_____
Print Name:  Joon Sun Lee

77.  The Lee Letter of Intent contained false, deceptive, and/or misleading material representations that defendants directed to Plaintiff Lee and that were made with the intention of inducing Plaintiff Lee to invest in North Central and in the Project by accepting the terms of defendants' offering.  These false, deceptive, and/or misleading material representations in the Lee Letter of Intent include, but are not limited to the following:

- Defendants' representation to Plaintiff Lee "that the property **has been acquired and developed by 2100 NORTH CENTRAL, LLC, a newly formed entity for that purpose**"  (emphasis added);

- Defendants' repeated references to "2100 NORTH CENTRAL, LLC" throughout the Lee Letter of Intent.

78.  At the time they created the Lee Letter of Intent and transmitted it to Plaintiff Lee by e-mail, defendants actually knew that the material representation set forth therein – "that the

property has been acquired and developed by 2100 NORTH CENTRAL, LLC, a newly formed entity for that purpose" – was false, they made this false material representation knowing that it was false and with the intention that plaintiff Lee rely upon it, and plaintiff Lee relied upon it to her detriment and sustained substantial losses as a result of that reliance.

79.   In addition, at the time they created the Lee Letter of Intent and transmitted it to Plaintiff Lee by e-mail, defendants actually knew that the repeated references to "2100 NORTH CENTRAL, LLC" were deceptive and misleading (particularly insofar as they were intended to mislead and deceive any reader of the Lee Letter of Intent into believing that "2100 NORTH CENTRAL, LLC" had "acquired" the Subject Property), they made these deceptive and misleading representations knowing that they were deceptive and misleading and with the intention that plaintiff Lee rely upon them, and plaintiff Lee relied upon them to her detriment and sustained substantial losses as a result of that reliance.

80.   Defendant Lee, acting both individually and as agent of North Central, North Central Road, and Lumen, knew that these material representations in the Lee Letter of Intent were false, deceptive, and misleading because:  (a) he caused North Central Road to be created less than two weeks prior to the closing of the purchase of the Subject Property in February 2007; (b) he caused North Central's valuable contractual rights to purchase the Subject Property to be transferred to North Central Road; and (c) he executed a number of documents on behalf of North Central Road on or about February 28, 2007 that enabled North Central Road to purchase the Property instead of North Central.

81.   By early Spring 2007 at the latest, all defendants had actual knowledge of this same information.

82.   Approximately six months later, with full knowledge that North Central did <u>not</u> purchase the Subject Property (and, in fact, that it did not own any real property at all), and that North Central Road <u>did</u> purchase the Property, defendants created the Lee Letter of Intent and transmitted it by e-mail to Plaintiff Lee as part of their efforts to solicit her purchase of equity in North Central knowing that the content of the Lee Letter of Intent was false, deceptive, and misleading.

83.   Furthermore, by its terms, the Lee Letter of Intent made Plaintiff Lee's "ownership of the [.925%] membership interest [in 2100 North Central, LLC] subject to execution and delivery of [the 2100 North Central, LLC] Operating Agreement. . . ."

84.   The North Central Operating Agreement contained false, deceptive, and/or misleading material representations that defendants directed to Plaintiff Lee and that were made with the intention of inducing Plaintiff Lee to invest in North Central and in the Project by accepting the terms of defendants' offering.  These false, deceptive, and/or misleading material representations in the North Central Operating Agreement include, but are not limited to the following:

- Defendants' representation to Plaintiff Lee that "[t]he purposes for which [2100 North Central, LLC] is organized is **to acquire, develop, redevelop, build, lease, sell and manage real property including 2100 North Central Avenue [sic], Fort Lee, New Jersey**, . . ."  [Emphasis added.]

85.   When the Lee Letter of Intent and the North Central Operating Agreement are read together (as defendants plainly intended Plaintiff Lee to do in order to induce Plaintiff Lee to invest in North Central), these documents convey the false, misleading, and deceptive material representation that investors such as Plaintiff Lee are being solicited to invest, and are actually investing, in the limited liability company that "acquired" the Subject Property and that is in the process of developing/redeveloping it.

86.   In reliance upon the defendants' representations, on or about September 10, 2007, Plaintiffs Lee and Cho executed the letters of intent and the North Central Operating Agreement memorializing their intention to invest in North Central.

87.   In reliance upon the defendants' representations, and based upon the wiring instructions that defendants provided, by September 12, 2007, Plaintiffs Lee and Cho had each wired $250,000 to North Central, and soon thereafter Plaintiffs Lee and Cho received from defendants Park and Moon, respectively, acknowledgements of these payments.   Thus, by September 12, 2007, Plaintiffs Lee and Cho had invested a total amount of $500,000.00 in North Central.

88.   Several days later, Lee and Cho received membership certificates that reflected their investment in North Central.

89.   On September, 24, 2007 Plaintiff Cho and Plaintiff Lee met with Defendant Park at Lumen's office.   During this meeting, Park told Plaintiff Lee and Cho that they plan on proceeding with other projects and emphasized that they treat the investors like family members. Park stressed that portions of the profits from this Project should be used for future projects to multiply the returns.   Park also provided Lee and Cho with the apartment sales brochures for the Project, and he told them that the unit values are very high because they can be used both as an apartment and as an office.   Throughout this meeting, Park assured Lee and Cho that the numbers and the projections shown in the brochure are calculated very conservatively and that even with those conservative numbers, they project that there would be at least a 75% return on equity for investors.

90.   During this same meeting, Park mentioned present investors and their shares and stated that the investors from their "Eugene connection" was Chairman Yu, President Joo, and Mr. Han, who was a friend of Chairman Yu.   Lee then complained to Park about the different

calculation of shares between the investors, and in response Park said that it was because of the investment timing and that there is nothing that he could do.  Park showed Cho and Plaintiff Lee the various individual investors and their timing from his computer.  Plaintiff Lee then inquired about an investor with what appeared to be a very low rate of return on his investment shown on the computer, and Park explained that that particular investment was a fixed rate investment and that Mr. Han's investment is also a fixed-return type, making the return on his investment shares lower than others.  Park further explained that fixed rate investors receive returns regardless of the profitability of the project.  Plaintiff Lee then inquired whether she and Cho could invest in the fixed return investment, and Park said that only a small investment of this type would still be possible.

91.   Park then took Cho and Plaintiff Lee to the Subject Property to view it.  Park drove them there in a Lexus LS, which Park made a point of saying was Robert Lee's car.  During the car ride to the Subject Property, Park described Defendant Lee as a prominent businessman who used his gifted business talent to negotiate what Park claimed was a very low purchase price for the Property, and Park emphasized that Defendant Lee was even able to negotiate a lease termination fee of $16.5 million.  During their visit to the Property, Plaintiffs Lee and Cho and Defendant Park were joined by the Lumen Director of Marketing (Mr. Yoo), and while everyone was on the rooftop, Park and Yoo pointed to the adjacent land and stated that they had put down a contract deposit on the adjacent land to purchase that property and to build another large luxury condominium building on it.  Upon information and belief, the representation that one or more of the defendants had put down a contract deposit on the adjacent land, and the necessary implication of this representation – that one or more of the defendants were in the process of

purchasing the property that was adjacent to the Subject Property was false, deceptive, and misleading.

92.   When they returned to the Lumen office following this visit to the Subject Property, Plaintiff Lee asked if she and Cho could invest further in the Project in fixed-return type of investment, and Park stated that they could.  Plaintiffs Lee and Cho said that they would consider investing $100,000 each in a fixed-return investment and the meeting was adjourned.

93.   The next day, Defendant Park called Plaintiffs Lee and Cho to inquire about the additional investment.  During this telephone conversation, Park told Plaintiffs Lee and Cho that the additional investment has to be sent by September 28th.  Park then e-mailed to Plaintiffs Lee and Cho a letter of intent and bank account transfer information, and he requested that they return to him the membership certificates previously issued to them.  However, the e-mailed letter of intent only indicated an equity investment, not a fixed-return investment.  Upon seeing this inaccuracy, Plaintiff Lee called Park to request that this be corrected.  Park then told Plaintiff Lee that when the membership certificate is returned to her and Cho, he would send the equity purchase agreement that includes the fixed-return investment, which he led Plaintiffs Lee and Cho to believe would be for a fixed return of 75% payable within two years.

94.   In reliance upon defendants' representations, on October 4, 2007, Plaintiff Lee sent $200,000.00 ($100,000.00 each for her and for Cho) by wire transfer to defendant Lumen, representing their additional investment in North Central.  The next day, Defendant Park confirmed Lumen's receipt of the $200,000.00 wire transfer, and indicated that he would return the original membership certificates.  Several days later, plaintiffs Cho and Lee received equity purchase agreements that reflected their equity investments in North Central totaling

$250,000.00 apiece and that also reflected their fixed-return investments in North Central totaling $100,000.00 apiece.

95.   Therefore, as of October 2007, defendants had induced Plaintiffs Lee and Cho to invest $350,000.00 apiece in North Central, for a total investment at that point in time between them of $700,000.00.

### Plaintiff Lee's Further Investment of $450,000.00 in North Central

96.   On October 16, 2007, Defendants Lee and Park again contacted Plaintiffs Lee and Cho to solicit a further investment in the Project.  On October 24th, Plaintiffs Lee and Cho visited the offices of Lumen and spoke to Defendant Park, who, during this meeting, pointed to an appraisal report by CBRE and said that they had obtained a new appraisal report that assessed the value of the building to be much higher than the purchase price, that everyone would profit without doing anything further even if they were just to sell the building, but if they proceeded with the project, the valuation is over 100 million dollars, providing for a much higher profit.  In addition, Park represented that all construction permits have been issued (which he claimed eliminated any risk), that they had obtained a permit to add another floor to the roof, that construction would begin very shortly, that the project would take about 14 months to complete, and that unit sales would begin in Spring 2008.

97.   Defendant Park also told Plaintiffs Lee and Cho during this October 24th meeting that they were looking for additional investors for this remarkable project, that the terms for additional investors would be identical to the terms afforded to the original investors, and that Plaintiffs Lee and Cho must invest before the end of October to obtain these favorable terms.

98.   In response, Plaintiff Lee told Park that, although she did have additional money, she could not invest further because she could not travel to Korea to access this money, that Cho

would not be able to assist in wiring the funds from Korea, and because she had to stay within the U.S. until the end of December, it would be impossible to wire the funds from Korea. Park replied to plaintiff Lee that there are many methods to accomplish the wiring of funds. Park told Plaintiff Lee that because they plan on obtaining more investors from Korea, they will have expenses in Korea such as marketing costs and legal fees to Jin U Rhi, their Korean legal counsel, and that he would discuss the matter with defendant Lee to find a solution.

99.   On November 2, 2007, Plaintiffs Lee and Cho received an e-mail from defendant Moon that provided them with the escrow account information of Jin U Rhi, who Moon identified as Lumen's legal counsel in Korea. Moon also indicated that if Plaintiffs Lee and Cho wire the funds to Rhi's attorney escrow account, these funds would be considered and treated as further investment in North Central, and that he would issue the certificate and purchase agreement accordingly.

100. In addition, on or about October 25, 2007, defendants sent by e-mail to Plaintiffs Lee and Cho documents entitled "EQUITY PURCHASE AGREEMENT" – with one such document addressed to Plaintiff Lee and the other addressed to Plaintiff Cho. ("October 25th Equity Purchase Agreements.")

101. The October 25th Equity Purchase Agreements contained false, misleading, and/or deceptive material representations that defendants made with the intention that Plaintiffs Lee and Cho rely thereupon to their detriment and to invest further in North Central. Such false, misleading, and/or deceptive material representations in the October 25th Equity Purchase Agreements include, but are not limited to the material representation in Section 3.1 that North Central "has full power to own and manage its property as it is now being conducted."

102. Based upon Defendants' representations and assurances, all of which proved false, misleading, and deceptive, on November 9, 2007, Plaintiff Lee invested an additional $450,000.00 -- $150,000.00 of which was to be an equity investment and $300,000.00 of which was to be for a fixed return of 50% payable in two years.  Specifically, as per the defendants' instructions, Plaintiff Lee wired this $450,000.00 additional investment in North Central to the attorney escrow account of Defendant Rhi -- who was, according to Defendants Park and Moon, Lumen's legal counsel. This material representation that Defendants Park and Moon made to Plaintiff Lee – that Defendant Rhi was Lumen's legal counsel in Korea -- also proved to be false.   However, Plaintiffs did not learn until February 24 2009 that Defendant Rhi was not, and never had been, Lumen's legal counsel – contrary to defendants' express misrepresentations.

103. Defendants reinforced the deceptive and misleading effect of their material misrepresentations described above by providing Plaintiff Lee on November 26, 2007 with another equity purchase agreement, the form and content of which was similar to the October 25th Equity Purchase Agreements (the "November 26th Equity Purchase Agreement").  The November 26th Equity Purchase Agreement contained false, misleading, and/or deceptive material representations that defendants made with the intention that Plaintiff Lee rely thereupon to her detriment and to invest further in North Central.  Such false, misleading, and/or deceptive material representations in the November 26th Equity Purchase Agreement include, but are not limited to the material representation in Section 3.1 that North Central "has full power to own and manage its property as it is now being conducted."

104. Plaintiff Lee's payment of $450,000 into defendant Rhi's attorney escrow account increased the total investment of Plaintiffs Lee and Cho in North Central to $1,150,000.00.

105. Had the defendants provided Plaintiffs Lee and Cho with accurate, non-deceptive information with respect to North Central and the Project, including but not limited to the ownership of the Subject Property, Plaintiffs Lee and Cho would not have invested in North Central and in the Project at all.

### Defendants' Creation and Use of 2100 North Central Road, LLC to Convert Substantial Portion of 2100 Central, LLC Assets to Themselves and to Dilute the Plaintiffs' Ownership Interests in 2100 North Central, LLC

106. On December 18, 2006, Defendant Lee (and/or other persons acting at defendant Lee's behest), caused North Central to be created as a New Jersey limited liability company by filing a Certificate of Formation with the New Jersey Secretary of State.

107. Upon information and belief, sometime after the formation of North Central but sometime before January 1, 2007, defendant Lee, acting in his capacity as manager of North Central, entered into a Purchase and Sale Agreement whereby North Central agreed to purchase the Subject Property from Normandy Fort Lee Associates, LLC, its then-current owner, at a price of $45,000,000.00. ("Purchase and Sale Agreement").

108. The Purchase and Sale Agreement vested valuable contractual rights in North Central as the contract purchaser of the Subject Property.

109. Unbeknownst to plaintiffs, on February 15, 2007, defendant Lee (and possibly other persons) caused North Central Road to be created as a Delaware limited liability company.

110. Notwithstanding that the Purchase and Sale Agreement vested valuable contractual rights in North Central as the contract purchaser of the Subject Property, following the creation of North Central Road and prior to the closing of the purchase of the Subject Property, which took place on or about February 28, 2007, defendant Lee (and possibly others) caused the

valuable contractual rights that North Central owned pursuant to the Purchase and Sale Agreement to be transferred to North Central Road.

111. On or about February 28, 2007, Defendant Lee executed documents that enabled North Central Road to purchase the Subject Property, notwithstanding that North Central owned the valuable contractual rights to purchase the Subject Property until Lee improperly and illicitly caused those contractual rights to be transferred to North Central Road for no value.

112. Following the closing of North Central Road's purchase of the Subject Property, defendants continued to market the sale of equity interests in North Central and solicit investment in North Central by purposefully withholding the material information that North Central Road, not North Central, actually purchased the Subject Property and by deliberately creating the false impression in plaintiffs and other investors that North Central owned the Subject Property.

113. At all times when defendants were soliciting from plaintiffs investments in North Central, defendants purposefully withheld from plaintiffs the material information that North Central – the limited liability company in which defendants were selling investment shares to plaintiffs – did not purchase the Subject Property and did not own any real estate.

114. At all times when defendants were soliciting investments in the Project from plaintiffs, defendants deliberately made false and misleading representations to plaintiffs both orally and in writing to create the false impression in plaintiffs that North Central – the limited liability company in which defendants were selling investment shares to plaintiffs – purchased the Subject Property and was the owner of the Project.

115. In addition, at all times when defendants were soliciting investments in the Project from plaintiffs, defendants made material misrepresentations both orally and in writing for the purpose

of deceiving and misleading plaintiffs into believing that the company in which they were purchasing investment shares, North Central, owned and was the developer of the Subject Property.

116. At various times, defendant Lee falsely represented to plaintiffs (and/or deliberately withheld from plaintiffs) the true extent of his purported and claimed ownership interest in North Central.   Defendant Lee made such false representations knowing the falsity of these representations, and intending that the plaintiffs and others rely upon these material and false representations to their detriment.

117. At various times, defendant Lee has claimed that <u>he</u> owns 100% of North Central Road <u>and</u> 50% of North Central; at other times, defendant Lee has claimed that <u>North Central</u> owns 100% of North Central Road (and that he owns 50% of North Central); and still at other times, defendant Lee has claimed that he owns 50% of North Central <u>and</u> that he and North Central <u>each own</u> 50% of North Central Road.

118.  At various times, defendants deliberately withheld from plaintiffs and others the existence and extent of his purported and claimed ownership interest in North Central Road. Defendants deliberately withheld such material information from plaintiffs and others with the intention that plaintiffs and other investors rely to their detriment upon the materially false impression that the deliberate withholding of this material information would create in plaintiffs and other investors.

119. At various times, defendants improperly and without any authorization falsely represented both orally and in writing that Eugene had an investment interest in the Project. Upon information and belief, defendants made such false representations for the purpose of trading upon the good name of Eugene and to illicitly gain credibility for the Project in order to

facilitate the defendants' ongoing scheme to obtain investments in the Project by misleading investors as to the true identity of the record owner of the Subject Property and by concealing from investors in the Project such as plaintiffs the extent to which defendants had taken material steps to dilute the value of the equity shares that defendants were selling in North Central and in the Project.

120.  At all times material to the causes of action set forth herein, defendants falsely represented to plaintiffs and others both orally and in writing:  (a) the value and the amount of the ownership interest in North Central that defendants were selling to plaintiffs and to other investors, (b) the true value of Subject Property and the Project; (c) the true status of the Project at various points in time in 2007, 2008, and 2009; (d) the identity of the purported owners of North Central; and (e) the extent of the equity in North Central that defendants were actually selling to plaintiffs and others.  Defendants made such false representations knowing the falsity of these representations, and intending that the plaintiffs and others rely upon these material and false representations to their detriment.

121.  At all times material to the causes of action set forth herein, defendants deliberately withheld from plaintiffs and others material information of which plaintiffs and other investors needed in order to make accurate and fully-informed investment decisions and determinations such as:  (a) the value and the amount of the ownership interests in North Central that defendants were selling to plaintiffs and to other investors, (b) the true value of Subject Property and the Project; (c) the true status of the Project at various points in time in 2007, 2008, and 2009; (d) the identity of the purported owners of North Central; and (e) the extent of the equity in North Central that defendants were actually selling to plaintiffs and others.  Defendants deliberately withheld such material information with the intention that the plaintiffs and others rely to their

detriment upon the false impressions that deliberate withholding of such material information created in plaintiffs.

122. Defendants purposefully created North Central Road, deliberately withheld accurate information from plaintiffs and other investors in the Project regarding the existence of North Central Road, regarding the extent to which defendant Lee purportedly held ownership interests in North Central and in North Central Road, and made numerous materially-false representations, both orally and in writing, to plaintiffs and other investors in North Central of the true extent to which Defendant Lee claimed to have ownership interests in North Central, North Central Road, and the Project.

123. At all times material to the causes of action set forth herein, defendants purposefully misled plaintiffs and other investors as to the existence and identity of North Central Road, and defendants purposefully withheld from plaintiffs and other investors accurate information with respect to the ownership of the Subject Property for the purpose of deceiving plaintiffs and others into purchasing investment/ownership shares in North Central.

## Plaintiffs' Discovery of Problems and Irregularities in 2008 and 2009

124. After Plaintiffs made their investments, there commenced a pattern of intentional and/or negligent mishandling of North Central and of the funds that they had entrusted to it.

125. Defendant Rhi converted the $450,000 invested by Plaintiff Lee on November 9, 2007 by transferring this money to the other defendants in his own name and in return receiving equity shares in North Central – a fact that Plaintiff Lee did not learn and had no reason to know until February 25, 2009.

126. In March 2008, Defendant Park attempted to elicit a further investment from Plaintiff Lee, but she told him that she and Plaintiff Cho had no more money to invest.  At around this

time, Defendant Lee also visited Korea to solicit further investment in North Central from Plaintiff Cho.

127. On July 25, 2008 -- almost one-and-a-half years after the Property was purchased – Defendants caused Defendant North Central Road to enter into a construction contract with Daibes Brothers to develop the Subject Property.  Defendants never provided plaintiffs with any explanation for this substantial delay – which was directly contrary to Defendant Lee's false, deceptive and misleading material misrepresentations to Plaintiff Yu that all aspects of the Project were progressing well, and that there was not a single problem with the Project, including but not limited to the construction schedules.

128. In November 2008, Plaintiff Cho met with Defendant Rhi in Rhi's Korean office.  Rhi advised Cho that the Project was not doing well, that no fixed return from principal would be paid, and that an attempt would be made to sell the building on the Property for $33,000,000.

129. Plaintiffs eventually learned that, contrary to defendants' representations about the purchase price, the actual purchase price paid for the Subject Property, $45 million, was far in excess of the Property's fair market value, and was accomplished only by obtaining mortgage financing totaling nearly $30 million.

130. In January 2009, counsel for Plaintiffs Lee and Cho wrote two letters to defendants requesting information on the progress of the Project and requesting documentation with respect to Plaintiffs' investment.  Defendant Lee referred Plaintiffs Lee and to a website, which Plaintiffs did examine.  Prior to January 2009, defendants never informed plaintiffs of the existence of this website.   The information and documentation contained on this website showed that Lee's recorded ownership in North Central was less than what she had, in fact, purchased. When

Plaintiffs sought information and clarification in this regard, defendants responded to these inquiries by claiming that the paperwork reflecting plaintiff Lee's investment had been lost.

131. In February 2009, Plaintiffs Lee and Cho complained to Defendant Lee.  They pointed out problems and also mentioned that they were not receiving the return on their fixed return investments.  Defendant Lee responded with apologies and representations that he would correct such errors.  All of these promises and representations, upon which Plaintiffs Lee and Cho relied in continuing to maintain their investments in North Central, turned out to be false.

132. On February 25, 2009, Plaintiff Cho met with Defendant Rhi in Rhi's Korean office and was shown documentation establishing that Defendant Rhi had converted Plaintiff Lee's $450,000 final investment.

133. Despite numerous letters and e-mails, all that Plaintiffs received from defendants were assurances that matters were in hand, apologies for record-keeping mistakes (one of which purportedly accounted for Defendant Rhi putting Plaintiff Lee's units of equity in his name), and apologies for lost business records.

134. Defendant Lee, both individually and as manager of North Central, had knowledge of and approved of all the foregoing misrepresentations as well as the actions and omissions of Defendants Lumen, Rhi, Park, and Moon.

135. Defendant Lee also claimed and was given an equity of $16,125,000 (the amount received from Mellon Bank, which had previously occupied the Property) in the Project, even though he had personally committed no comparable fund to it.  In fact, ownership in this $16,125,000 equity should have been 100% vested in North Central.  By improperly claiming ownership of this equity, Defendant Lee converted to himself this equity interest that belonged to

North Central, and here thereby improperly and illicitly diluted extent and value of the ownership interests in North Central that defendants induced Plaintiffs to purchase.

136. As a result of all of the above misrepresentations and omissions to disclose, the sums of money invested by plaintiffs were, upon information and belief, imprudently invested and were ultimately dissipated and lost.

137. According to recent e-mails from Defendants Rhi, the Property is about to be foreclosed upon.

## FIRST CLAIM FOR RELIEF
### (Violations of Section 10(b) of the 1934 Act and Rule 10b-5)

138. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

139. In relation to the defendants' sale of securities -- units of interest in North Central -- and the plaintiffs' resulting investments in North Central, defendants employed devices, schemes, and artifices to defraud plaintiffs and other equity holders of North Central by the use of the mails and instrumentalities of transportation or communication in interstate commerce, including but not limited to interstate communications transmitted by wires.

140. In connection with their offering of equity shares in North Central, defendants made false, deceptive and misleading statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and defendants engaged in acts, practices, or courses of business which operated as a fraud and deceit upon plaintiffs, in violation of Section 10(b) of the 1934 Act and of Rule 10b-5.

141. At the time of their investment and purchase of such shares of equity in North Central, plaintiffs did not know of the untruths or omissions and relied upon the truthfulness and completeness of defendants' representations to their detriment.

142. In reliance upon these material misrepresentations, knowing omissions, and fraudulent and deceptive actions, plaintiffs actually invested and purchased equity shares in North Central.

143. As a result of the devices, schemes, and artifices to defraud employed by defendants, as well as their untrue statements of material fact and omissions to state other facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and their acts, practices, and courses of business, which operated as a fraud and deceit upon plaintiffs, defendants induced plaintiffs to invest substantial sums of money in North Central.

144. Plaintiffs sustained such damage in reliance upon defendants' fraudulent misrepresentations, omissions to disclose, and fraudulent and deceitful acts, practices, and course of business, for which the defendants should be required to pay damages to plaintiffs in an amount to be determined.

145. This civil action, and this particular cause of action, is brought less than two years after the plaintiffs' discovery of the untrue statements and omissions herein alleged or after such discovery should have been made by the exercise of reasonable diligence, defendants having concealed their misrepresentations and omissions by, among other things, deliberately obfuscating the true identity of the owner of the Subject Property as well as the extent and value of the ownership interests in North Central that they were soliciting plaintiffs to purchase and that they sold to plaintiffs.

## SECOND CLAIM FOR RELIEF
## (Violations of the Securities Act of 1933)

146. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

147. By means of the devices, schemes, and artifices to defraud, untrue statements of material fact and omissions to state material facts, fraudulent transactions and practices, all described herein, the defendants:  (a) engaged in transactions, practices, our courses of business which operated as a fraud or deceit upon the plaintiffs; (b) offered for sale and sold to plaintiffs equity in North Central as described above; and consequently (c) obtained money or property from plaintiffs by those means, all in violation of §§12(2) and 17(a) of the 1933 Act (15 U.S.C. §§ 77l(a)(2) and 77q(a)), and the rules and regulations promulgated thereunder.

148. At the time of the purchase of such shares of stock, plaintiffs did not know of the untruths or omissions and relied upon the truthfulness and completeness of such statements to their detriment.

149. This civil action, and this particular cause of action, is brought less than two years after the plaintiffs' discovery of the untrue statements and omissions herein alleged or after such discovery should have been made by the exercise of reasonable diligence, defendants having concealed their misrepresentations and omissions by, among other things, deliberately obfuscating the true identity of the owner of the Subject Property as well as the extent and value of the ownership interests in North Central that they were selling to plaintiffs, and by providing unrealistic and misleadingly optimistic reports of the status of the Project.

150. The devices, schemes, and artifices to defraud, the untrue statements of material fact and omissions to state material facts, the fraudulent transactions and practices, all described herein

and in which defendants engaged, caused plaintiffs to purchase interests in North Central and in the Project, and caused plaintiffs to sustain substantial losses in an amount to be determined.

### THIRD CLAIM FOR RELIEF
### (Violations of the Controlling Person Sections of the 1933 Act and the 1934 Act)

151. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

152. At all times relevant to the causes of action set forth herein, defendant North Central was a "controlled person" within the meaning of Section 15 of the 1933 Act and Section 20 of the 1934 Act.

153. At all times relevant to the causes of action set forth herein, defendants Lee, Rhi, Park, Moon, North Central Road, and Lumen possessed and actually exercised the power to direct or cause the direction of the management and policies of North Central.

154. At all times relevant to the causes of action set forth herein, defendants Lee, Rhi, Park, Moon, North Central Road, and Lumen had actual power or influence over the North Central, and these defendants all actually participated in the unlawful activities described more fully above.

155. Defendants Lee, Rhi, Park, Moon, North Central Road, and Lumen committed the aforesaid violations of the 1934 Act and Rule 10b-5 by means of their control over North Central, within the meaning of Section 20(b) of the 1934 Act.

156. Defendants Lee, Rhi, Park, Moon, North Central Road, and Lumen committed the aforesaid violations of the 1933 Act by means of their control over North Central, within the meaning of Section 15 of the 1933 Act.

157. By means of the devices, schemes, and artifices to defraud, untrue statements of material fact and omissions to state material facts, fraudulent transactions and practices, all described herein, the defendants Lee, Rhi, Park, Moon, North Central Road, and Lumen controlled North Central and caused North Central to offer for sale and to sell to plaintiffs shares of equity (securities) as described above, all in violation of Section 15 of the 1933 Act, and in violation of Section 20 of the 1934 Act.

158. At all times relevant to the claims asserted in this civil action, defendants Lee, Rhi, Park, Moon, North Central Road, and Lumen actually and intentionally participated in this wrongful conduct and intentionally thereby caused plaintiffs to purchase equity interests (securities) in North Central.

159. At the time of the purchase of such shares of equity in North Central, plaintiffs did not know of the untruths or omissions and relied upon the truthfulness and completeness of such statements to their detriment.

160. Defendants' violations of Section 15 of the 1933 Act and Section 20 of the 1934 Act caused plaintiffs to purchase interests in North Central and in the Project, and caused plaintiffs to sustain substantial damages in an amount to be determined.

## FOURTH CLAIM FOR RELIEF
### (Fraud)

161. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

162. These representations that defendants made to plaintiffs were false. At the time defendants made these representations to plaintiffs, defendants knew that these representations

were false, and they made these representations with the intention that plaintiffs rely upon them in deciding to purchase investment shares in North Central.

163. Defendants made the fraudulent misrepresentations and omissions to disclose described above knowing the falsity and misleading nature thereof, and intending that plaintiffs rely upon those misrepresentations and omissions of material facts to their detriment.

164. Plaintiffs relied upon such false and deceptive misrepresentations and omissions to disclose when deciding to invest in North Central.

165. Plaintiffs have been directly and proximately injured as a result of defendants' fraud by the loss of the funds that they have invested.

**FIFTH CLAIM FOR RELIEF**
**(Violations of the New Jersey Uniform Fraudulent Transfer Act)**

166. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

167. Defendants have engaged in illegal conduct that is tainted by several of the "badges of fraud" set forth in the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20, *et seq.* (hereinafter "UFTA").  By way of example only:

    **a.** Defendants purposely diluted plaintiffs' ownership interests in North Central and in the Project by causing North Central's primary asset – its rights under the Purchase and Sale Agreement – to be transferred to North Central Road and then by soliciting plaintiffs' purchase of equity interests and investments in North Central under the false pretense that North Central owned the Subject Property;

    **b.** Defendant Lee improperly and illicitly claimed ownership of the $16.5 million lease termination fee that belongs to North Central directly, and to the equity owners of North Central indirectly; and

    **c.** Defendants, including but not limited to defendant Rhi, violated the UFTA by fraudulently inducing Plaintiff Lee to transfer $450,000.00 to defendant Rhi's attorney escrow account, and then by transferring Plaintiff Lee's $450,000.00 – which was to be credited to her as another substantial investment in North Central

- 44 -

– to defendants other than Rhi and crediting the payment of that $450,000.00 to Rhi (and issuing him additional equity shares in North Central) rather than crediting that payment to Plaintiff Lee.

168. Through these actions and omissions, defendants have committed violations of the UFTA.

169. As a direct and proximate result of said defendants' violations of the UFTA, plaintiffs have been deprived of property and/or have sustained damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract)

170. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

171. The Plaintiffs expended the sums of money stated above with the express understanding that in exchange they would be receiving both equity and fixed income shares in North Central in the amounts and proportions stated above.

172. Plaintiffs furthermore were promised the sums of money that were expended by them would be used to obtain the necessary financing for the construction project.

173. Defendants failed to give plaintiffs the fixed income shares as they promised, and failed to use the funds invested by plaintiffs to obtain the necessary financing for the construction project as they had also promised.

174. As a direct and proximate result of these and other related breaches of contract, the plaintiffs have been denied what they reasonably expected to receive under their agreements to invest in North Central, have been deprived of the benefit of the bargain and sustained damages in an amount to be determined.

## SEVENTH CLAIM FOR RELIEF
### (Anticipatory Breach)

175. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

176. Defendants, by their actions and statements, have evinced a definite intention not to repay Plaintiffs upon their investments, as promised, when the Project is completed.

177. Accordingly, Plaintiffs are justified in treating their Equity Purchase Agreements as having been breached.

178. As a direct and proximate result of the aforesaid anticipatory breaches of the Equity Purchase Agreements, plaintiffs Lee and Cho lost the benefit of their bargain and sustained damages in an amount to be determined.

## EIGHTH CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

179. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

180. The contracts and/or agreements described and referenced above contain implied covenants of good faith and fair dealing pursuant to the common law of New Jersey.

181. The Defendants breached the implied covenant of good faith and fair dealing.

182. The defendants committed these breaches of the implied covenants of good faith and fair dealing inherent in the contracts and/or agreements described and referenced above in wonton and willful disregard of the plaintiffs' contractual rights and reasonable expectations.

183. As a direct and proximate result of the aforesaid breach of the implied covenant of good faith and fair dealing, plaintiffs lost the money that they had invested, lost the benefit of the bargain, had their funds misappropriated, and were harmed in diverse other ways.

### NINTH CLAIM FOR RELIEF
### (Violations of the New Jersey RICO Act)

184. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

185. . At all times relevant to the causes of action set forth in this complaint, defendants constituted an "enterprise," as that term is used and defined in the New Jersey Racketeer Influenced and Corrupt Organizations ("RICO") Act, N.J.S.A. 2C:41-1 to -6.

186. At various times relevant to the causes of action set forth in this complaint, defendants committed, and conspired to commit, certain acts that constitute "racketeering activity," as that term is used and defined in the New Jersey RICO Act, N.J.S.A. 2C:41-1 to -6, including but not limited to:  Mail Fraud, contrary to 18 U.SC. § 1341, Wire Fraud, contrary to 18 U.SC. § 1343, and "fraud in the offering, sale or purchase of securities" within the meaning of N.J.S.A. 2C:41-1.

187. At all times relevant to the causes of action set forth in this complaint, defendants engaged in a "pattern of racketeering activity," as that term is used and defined in the New Jersey RICO Act.  Defendants, acting by, through, and on behalf of their enterprise, engaged in at least two incidents of racketeering activity within the last 10 years, including but not limited to the incidents of racketeering activity described above.

188. The incidents of racketeering activity described above embrace criminal conduct that has the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

189. The existence of this enterprise, the actions and omissions of the defendants as participants in the affairs of this enterprise, as well as the nature, extent, and scope of said defendants' actions constitute a threat of continuing racketeering activity.  Upon information and belief, certain members of this enterprise engaged in similar acts of racketeering activity within the last 10 years with respect to other parcels of real estate within the State of New Jersey.

190. At all times relevant to the cause of action set forth in this count, the "pattern of racketeering activity," that defendants engaged in affected trade or commerce within the State of New Jersey.

191. In violation of N.J.S.A. 2C:41-2(a) and -2(c), defendants engaged in activities which affect trade or commerce within the State of New Jersey, and said defendants conducted or participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described more specifically above.

192. At all times relevant to the claims asserted in this complaint, said defendants were employed by and/or associated with this enterprise because each such defendant had a position or a functional connection with the enterprise that enabled him or her to engage or participate directly or indirectly in the affairs of the enterprise.  Furthermore, said defendants acted purposefully and knowingly in the affairs of this enterprise by engaging in activities that sought to further, assist or help effectuate the goals of the enterprise.  Said defendants knowingly sought to carry out, assist, or further the operations of this enterprise or otherwise sought to implement or execute managerial or supervisory decisions.

193. In connection with plaintiffs' investment in North Central and in the Project, defendants also conspired to engage in a pattern of racketeering activity, contrary to N.J.S.A. 2C:41-2(d). Said defendants knowingly agreed to participate in this enterprise through a pattern of racketeering activity. Said defendants were aware of the existence this enterprise. At a minimum, said defendants knew the general nature of the enterprise and knew that this enterprise extended beyond his or her individual role.

194. Said defendants also agreed to participate directly or indirectly in the conduct of the affairs of the enterprise by agreeing to commit, and/or by agreeing that some other members of the conspiracy would commit, at least two racketeering acts. At all times, said defendants so acted knowingly and purposely with knowledge of the unlawful objective of the conspiracy and with the intent to further its unlawful objective.

195. Said defendants agreed to participate directly or indirectly in the conduct of the affairs of this enterprise by agreeing to commit, and/or to aid other members of the conspiracy to commit, at least two acts of racketeering; and said defendants entered into this agreement knowingly and purposely with knowledge of the unlawful objective of the conspiracy and with the intent to further its unlawful objective.

196. As a direct and proximate result of said defendants' violations of N.J.S.A. 2C:41-2, plaintiffs have sustained damages in an amount to be determined at trial.

### TENTH CLAIM FOR RELIEF
### (Violations of the New Jersey Consumer Fraud Act – Affirmative Acts)

197. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

198. The New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1, *et seq.* (the "NJCFA" or the "Consumer Fraud Act"), declares it to be an unlawful practice for any person to use or employ any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or to knowingly conceal, suppress, or omit any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, or in connection with "the subsequent performance of such person as aforesaid. . . ." <u>N.J.S.A.</u> 56:8-2.

199. In connection with defendants' marketing and sale of interests in North Central and in the Project, defendants committed numerous violations of the NJCFA by using and employing unconscionable commercial practices, deceptions, fraudulent acts, false pretenses, false promises, and misrepresentations, contrary to <u>N.J.S.A.</u> 56:8-2.

200. As a direct and proximate result of the defendants' violations of the NJCFA described above, plaintiffs have suffered and sustained substantial ascertainable losses, with the exact amount of these losses to be determined at trial.

### ELEVENTH CLAIM FOR RELIEF
### <u>(Violations of the New Jersey Consumer Fraud Act – Knowing Omissions)</u>

201. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

202. In connection with defendants' marketing and sale of interests in North Central and in the Project, defendants committed numerous violations of the NJCFA by knowingly concealing, suppressing, and omitted material facts from plaintiffs in connection with defendants' successful solicitation of plaintiffs and consequent sale of equity in North Central to plaintiffs, and they did so with the intent that plaintiff rely upon their concealments, suppressions, and omissions.

203. These knowing acts and omissions constitute the "use" and/or "employment" of "the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of merchandise" within the meaning of, and in violation of, N.J.S.A. 56:8-2.

204. As a direct and proximate result of the violations of the NJCFA described above and committed by defendants, plaintiffs have suffered and sustained substantial ascertainable losses, with the exact amount of these losses to be determined at trial.

## TWELFTH CLAIM FOR RELIEF
### (Civil Conspiracy)

205. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

206. Upon information and belief, defendants agreed between and/or among themselves, to conspire or scheme to engage in an illegal or unlawful act, and/or to engage in a lawful or legal act by unlawful or illegal means and have taken at least one act in furtherance thereof.

207. As a direct and proximate result of the acts of civil conspiracy, the plaintiffs were directly and materially damaged and have sustained substantial losses in an amount to be determined.

## THIRTEENTH CLAIM FOR RELIEF
### (Conversion)

208. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

209. Defendants unlawfully exercised dominion and control over property belonging to plaintiffs.  By way of example only:

a. Defendants purposely diluted plaintiffs' ownership interests in North Central and in the Project by causing North Central's primary asset – its rights under the Purchase and Sale Agreement – to be transferred to North Central Road and then by soliciting plaintiffs' purchase of equity interests and investments in North Central under the false pretense that North Central owned the Subject Property;

b. Defendant Lee improperly and illicitly claimed ownership of the $16.5 million lease termination fee that belongs to North Central directly, and to the equity owners of North Central indirectly; and

c. Defendants, including but not limited to defendant Rhi, violated the UFTA by fraudulently inducing Plaintiff Lee to transfer $450,000.00 to defendant Rhi's attorney escrow account, and then by transferring Plaintiff Lee's $450,000.00 – which was to be credited to her as another substantial investment in North Central – to defendants other than Rhi and crediting the payment of that $450,000.00 to Rhi (and issuing him additional equity shares in North Central) rather than crediting that payment to Plaintiff Lee.

210. As a direct and proximate result of defendants' conversions, plaintiffs have sustained damages in an amount to be determined.

## FOURTEENTH CLAIM FOR RELIEF
### (Unjust Enrichment – Quasi-Contract)

211. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

212. As a direct and proximate result of these wrongs, defendants have been unjustly enriched at the expense of plaintiffs.

213. Under applicable New Jersey law, a quasi-contract between plaintiffs and defendants was formed that requires defendants to disgorge their ill-gotten gains and those amounts by which they have unjustly enriched themselves.  Consequently, defendants should be required to disgorge their ill-gotten gains.

## FIFTEENTH CLAIM FOR RELIEF
### (Alter Ego/Dominance/Piercing the Corporate Veil)

214. Defendants Lee, Rhi, Moon, Park, and Lumen, so dominated the business and affairs of North Central that North Central had no true separate existence and identity apart from the defendants.

215. At all times relevant to the claims asserted in this action, Defendants Lee, Rhi, Moon, Park, Lumen, and North Central Road acted as alter egos of North Central, which plaintiffs have now come to learn had no genuine existence separate and apart from defendants Lee, Rhi, Moon, Park, Lumen, and North Central Road.

216. At all times relevant to the claims asserted in this action, Defendants Lee, Rhi, Moon, Park, Lumen, and North Central Road acted as alter egos of North Central, and misused the identities of Lumen, North Central, and North Central Road to commit the deceptive and fraudulent actions described above.

217. As a direct and proximate result of said defendants' misconduct in this regard, plaintiffs have sustained damages in an amount to be determined at trial.

218. In order to avoid fraud and injustice, the corporate forms of Lumen, North Central, and North Central Road should be disregarded to hold the defendants Lee, Rhi, Moon, Park, and John Does 1 through 50 personally responsible for their wrongful conduct.

## SIXTEENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

219. Plaintiffs repeat and re-allege each and every allegation set forth above with same force and effect as if fully set forth herein.

220. A confidential and/or fiduciary relationship existed between the plaintiffs and defendants Lee, Rhi, Park, Moon, and Lumen.

221. Defendants Lee, Rhi, Park, Moon, and Lumen had a duty to act according to the standards of conduct required of fiduciaries, which included the responsibility to act in good faith.

222. Defendants Lee, Rhi, Park, Moon, and Lumen breached their fiduciary duties to plaintiffs by engaging in the acts set forth above.

223. In addition, defendants have so neglected their fiduciary duties that the Subject Property is in imminent danger of being foreclosed upon.

224. The Plaintiffs have been directly and proximately injured by the defendants' violations of the fiduciary duties they owed to plaintiffs.

225. In light of the defendants' breaches of their fiduciary duties, an accounting of the assets, liabilities, income, and expenses of North Central is fully warranted and necessary in order to determine the extent to which defendants have improperly dissipated the assets of North Central.

226. In addition, in light of the defendants' illicit dilution of the extent and amount of the Plaintiffs' investment in North Central, an accounting of the Plaintiffs' ownership interests in North Central is fully warranted and necessary.

### SEVENTEENTH CLAIM FOR RELIEF
### (Oppressed Minority Shareholder Action, *N.J.S.A. 14A:12-7 et seq.*)

227. Plaintiffs repeat and re-allege each and every allegation set forth above with same force and effect as if fully set forth herein.

228. Defendant North Central has 25 or fewer shareholders within the meaning N.J.S.A 14A:12-7(1) (c).

229. Defendants have acted fraudulently, and/or illegally and/or have mismanaged North Central and/or have abused their authorities as officers or directors of North Central, and/or have acted oppressively and /or unfairly toward the plaintiffs in their capacity as shareholders.

230. The Court is asked to appoint a custodian and/or provisional director and/or to dissolve North Central, and/or to order the sale of the stock of North Central pursuant to N.J.S.A. 14A:12-7(1).

231. In addition, governing New Jersey law empowers the Court to order an accounting of North Central and North Central Road's assets and liabilities, to appoint a receiver to assume full control of North Central, of the Subject Property, and of the Project, and to order the immediate turnover of the corporate and financial records of North Central.

232. Pursuant to this authority and in light of the nature and extent of the defendants' misconduct and mismanagement of North Central, the Subject Property, and the Project, plaintiffs respectfully request that the Court order an accounting of North Central and North Central Road's assets and liabilities, to appoint a receiver to assume full control of North Central, of the Subject Property, and of the Project, and to order the immediate turnover of the corporate and financial records of North Central.

### EIGHTEENTH CLAIM FOR RELIEF
### (Imposition of a Constructive Trust)

233. Plaintiffs repeat and re-allege each and every allegation set forth above with same force and effect as if fully set forth herein.

234. Defendants have engaged in illegal conduct that constitutes breaches of their duties owed to plaintiffs.

235. In light of the wrongful actions and omissions that defendants have committed, permitting defendants to retain possession, custody, and control of the funds that plaintiffs invested in North Central and in the Project would create an injustice and would be highly inequitable.

236. In order to avoid this inequity and injustice, the Court should impose a constructive trust upon the defendants' assets.

WHEREFORE, the plaintiffs respectfully request relief as follows:

(a)  For compensatory damages in an amount to be determined, but not less than $2,150,000.00;

(b)  For treble damages as authorized/required by the New Jersey RICO Act and by the Consumer Fraud Act.

(c)  For the return of all sums they have been induced to invest in North Central;

(d)  For punitive damages in an amount to be determined;

(e)  For reasonable counsel fees to the extent permitted by statute (including but not limited to the New Jersey RICO Act and the Consumer Fraud Act), Court Rule, or contract;

(f)  For costs of suit;

(g)  For prejudgment and postjudgment interest;

(h)  For an accounting by the defendants;

(i)  For the appointment of a receiver to assume immediate control of North Central's assets and operations;

(j)  For an injunction freezing all assets of North Central and enjoining defendants from expending, transferring, or altering any assets of North Central; and

(k)     For such other and further relief as the Court may deem necessary and proper, in the interest of justice.

## **JURY DEMAND**

Pursuant to Rule 38(d) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury on all issues so triable by right.

s/<u>Bong June Kim</u>

BONG JUNE KIM (BK-6989)

KIM & BAE, P.C.

Attorneys for Plaintiffs

2160 North Central Road, Suite 303

Fort Lee, NJ 07024

Tel: (201) 585-2288

Fax:(201) 585-2246